Reversed and Rendered and Opinion filed February 12, 2009








Reversed and
Rendered and Opinion filed
February 12, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00873-CV

____________

 

BRIAN D. MONEYHON AND CHERYL
PARRISH-MONEYHON, Appellants

 

V.

 

PATRICIA MONEYHON, Appellee

 



 

On Appeal from the 412th
District Court

Brazoria County, Texas

Trial Court Cause No. 37527

 



 

O P I N I O N








A husband and wife appeal a judgment from the trial court
ordering the couple to convey title to a home, which the couple shared with the
husband=s mother, to the
husband=s mother.  In five
issues, the couple complains that (1) the judgment imposing a constructive
trust on the home based on an alleged breach of fiduciary duty is improper
because the judgment does not comport with the pleadings; (2) the trial court=s judgment cannot
be affirmed on any other basis; (3) the mother is precluded from seeking
judicial assistance to re-acquire title to the home that allegedly was
fraudulently conveyed; (4) injunctive relief is improper; and (5) the home was
a gift from the mother to the son.  We reverse and render.

I.  Factual and Procedural
Background

Before appellant Brian Moneyhon=s marriage to
appellant Cheryl Parrish-Moneyhon,  Brian lived with appellee, his seventy-five-year-old
mother, Patricia Moneyhon in a Houston home referred to by the parties as ABash Place.@  By her own admission, Patricia was
dependent on Brian=s care, and had been for many years, because she was not in
good health.[1] 
Patricia sold Bash Place, and proceeds from that sale were used to purchase a
home in Lake Jackson.  The title to the Lake Jackson home was transferred to
Brian alone.  Brian and Patricia moved to the home in Lake Jackson, which is
the home at issue in this case. 

Brian and Cheryl were married shortly after he and Patricia
moved to Lake Jackson.  Cheryl moved into the Lake Jackson home with Brian and
Patricia.  In the months that followed, Brian and Cheryl=s relationship
with Patricia deteriorated, which the couple attributed to Patricia=s declining health
and growing demands.  The couple believed it was in Patricia=s best interest
for her to live in a facility that was better-equipped to meet her needs, and
they served Patricia with a notice of eviction in hope that she would move to
an assisted-living facility.  Upon receiving the eviction notice, Patricia sued
Brian and Cheryl, seeking an injunction against the couple to prevent her
eviction.

Patricia petitioned the district court to determine
ownership of the home and to declare a constructive trust.  In her petition for
injunction, Patricia made the following factual allegations:








$                  
Patricia agreed
to sell her Bash Place home and purchase the Lake Jackson home.

$                  
The proceeds
from the sale of Bash Place were dispersed to Patricia and Brian, with the bulk
of the proceeds transferred to a title company in Lake Jackson. 

$                  
Patricia
received roughly $49,000 by check, which was endorsed by Brian and deposited in
a bank.  Brian subsequently withdrew or spent the money to Patricia=s damage.

$                  
Patricia and
Brian discussed the purchase of the Lake Jackson home with the understanding
that they would reside there together.  Each of them continuously have lived
together at the Lake Jackson home since moving to the home in November 2004.

$                  
Brian used the
proceeds of the sale of Bash Place to purchase the Lake Jackson home.  All of
the money used for the purchase of the Lake Jackson home was Patricia=s.

$                  
Brian, by deed
transfers, purposely transferred an undivided one-half interest in the Lake
Jackson home to Cheryl, which was done without Patricia=s consent or approval to Patricia=s damage.

$                  
In March 2006,
the couple gave Patricia a thirty-day eviction notice, requesting her to vacate
the premises of the Lake Jackson home.

Patricia
also petitioned for the district court to declare a constructive trust, based
on the following allegations:

$                  
Patricia sold
her Bash Place home.  Unbeknownst to Patricia, Brian and Cheryl arranged for
the purchase of the Lake Jackson home using entirely the proceeds from the sale
of the Bash Place home.  Brian took title to the Lake Jackson property.

$                  
The couple, through
a series of conveyances, transferred the home to each other.  The couple
obtained the property in complete disregard to Patricia=s rights by promising or
representing to Patricia that Patricia would own the property, but Aif anything ever happened@ to Patricia, Brian would receive
the property.  Brian promised to let Patricia live the rest of her life at the
Lake Jackson home.

$                  
After Patricia
learned of the couple=s Aplan to dispossess [her] and own the property,@ Brian promised Patricia that he
would convey the property to her. The couple did not convey the Lake Jackson
home to Patricia.








$                  
Brian=s promises were material
representations because Patricia did not agree that Brian would own the
property to Patricia=s exclusion.  The couple=s representations were false
because they never intended to reconvey the property to Patricia, though the
representations were made with the intent that Patricia would act upon them.

$                  
Patricia fully
performed on the agreement, and Brian and Cheryl breached the agreement by
failing to fulfill the expressed promises and representations made.  Brian and
Cheryl collaborated with each other to obtain title to the Lake Jackson
property using all of Patricia=s funds.

$                  
Patricia has
been injured and deprived of her funds and property because she relied on the
couple=s promises and representations. 
The couple has been unjustly enriched by being permitted to stay on the Lake
Jackson property.  A constructive trust is the only remedy to prevent their
unjust enrichment at Patricia=s expense.

$                  
Because the
couple=s conduct was fraudulent and
malicious, Patricia is owed exemplary damages to deter similar conduct by the
couple in connection with a home-equity mortgage on the Lake Jackson home.[2]

The couple denied Patricia=s allegations and
alleged that the Lake Jackson home was Brian=s sole and
separate property, in which he conveyed an undivided one-half interest to
Cheryl just before their marriage.  The couple alleged that they permitted
Patricia to reside in the Lake Jackson home until she began verbally and
physically assaulting the couple, and then they sought to evict Patricia.  They
also filed a counterclaim, alleging trespass to try title and that Patricia
made an unconditional gift of the home to Brian.

After a bench trial, the trial court made the following
findings:

$                  
Clear and
convincing evidence shows Patricia did not intend to make an absolute gift of
the Lake Jackson home to Brian to her exclusion.

$                  
A fiduciary
relationship existed between Patricia and Brian, and Brian breached the
relationship in failing to disclose factual information about Medicare and
estate taxes and potential effects from the transaction.

$                  
The conveyance
to Brian from Patricia was a fraudulent conveyance. 








The
trial court issued a permanent injunction in favor of Patricia and ordered the
couple to convey the Lake Jackson home to Patricia.  The trial court ordered
that Patricia take nothing for exemplary damages or for attorney=s fees.  The
couple now appeals the trial court=s judgment.

II.  Issues and Analysis

Did the trial court err in
rendering judgment based on the existence and breach of a fiduciary duty?

In their first issue, Brian and Cheryl complain that the
trial court erred in awarding Patricia relief based on a finding that Brian
owed Patricia a fiduciary duty and breached that duty.  According to Brian and
Cheryl, because Patricia did not assert a claim for breach of a fiduciary duty,
and the issue was not tried by consent, the trial court=s finding is in
error. 

A trial court=s judgment must
conform to the pleadings.  Tex. R. Civ. P.
301.  Pleadings must give reasonable notice of the claims asserted.  SmithKline
Beecham Corp. v. Doe, 903 S.W.2d 347, 354B55 (Tex. 1995).  A
reviewing court should liberally construe the petition to contain any claims
that reasonably may be inferred from the specific language as used in the
petition and uphold the petition as to those claims, even if an element of a
claim  is not specifically alleged.  See id.  In making this
determination, however, a reviewing court cannot use a liberal construction of
the petition as a license to read into the petition a claim that it does not
contain.  San Saba Energy, L.P. v. Crawford, 171 S.W.3d 323, 338 (Tex.
App.CHouston [14 Dist.]
2005, no pet.).  The petition must give fair and adequate notice of the claims
being asserted, and, if the reviewing court cannot reasonably infer that the petition
contains a claim, then it must conclude the petition does not contain this
claim, even under a liberal construction.  See SmithKline Beecham Corp.,
903 S.W.2d at 354B55.  It is against this standard that we
must analyze Patricia=s pleadings to determine if they may be
construed as containing a claim for breach of fiduciary duty.








Although Patricia pleaded for equitable relief in the form
of a constructive trust, even under a liberal construction, Patricia=s live petition
for constructive trust cannot be said to contain any allegation or even a
mention of the existence of a fiduciary relationship[3]
or the breach of a fiduciary relationship.[4] 
Because the trial court=s judgment awarded title to Patricia based
on a breach of a fiduciary duty, the judgment did not conform to the pleadings,
and the trial court erred in granting such relief in the absence of pleadings
to support such relief or trial by consent.[5] 
See Tex. R. Civ. P. 301; Binder
v. Joe, 193 S.W.3d 29, 32 (Tex. App.CHouston [1st
Dist.] 2005, no pet.).  If issues not raised by the pleadings are tried by
express or implied consent of the parties, these issues shall be treated as if
they had been raised by the pleadings.  See Tex. R. Civ. P. 67, 301; Baltzer v. Medina, 240 S.W.3d
469, 476 (Tex. App.CHouston [14th Dist.] 2007, no pet.).  To
determine whether the issue was tried by consent, the court must examine the
record not for evidence of the issue, but rather for evidence of trial of the
issue.  Greene v. Young, 174 S.W.3d 291, 301 (Tex. App.CHouston [1st
Dist.] 2005, pet. denied).  Thus, absent record evidence that a
breach-of-fiduciary-duty claim was tried by consent, the judgment on that claim
cannot stand.








The record utterly fails to support trial by consent of a
breach-of-fiduciary-duty claim.  At no point did any party present evidence of
a fiduciary relationship based on trust or confidence.  Though the record
indicates that Patricia depended on Brian for care and that he shared a joint
checking account with her, nothing in the record indicates that the parties
were trying the issue of whether Patricia and Brian=s relationship
involved such a high degree of trust and confidence as to give rise to a
fiduciary duty or that Brian breached such a fiduciary duty.[6] 
To the contrary, it was only during closing arguments that Patricia=s trial counsel
mentioned B for the first time B a Aconfidential
relationship@ between Brian and Patricia.  Prior to the close of
evidence, however, no party presented evidence or made any reference to this
alleged confidential relationship.  Thus, we can only conclude that the issue
of the existence or breach of a fiduciary duty was not tried by consent of the
parties.  Absent  either trial by consent or pleadings to support a
breach-of-fiduciary-duty claim, the trial court erred in granting Patricia relief
on this basis.  See Baltzer, 240 S.W.3d at 476.  Accordingly, we sustain
Brian and Cheryl=s first issue.  

May the trial court=s judgment be affirmed based on any
other claim?








In Brian and Cheryl=s second issue,
they assert that the trial court did not find that they committed actual fraud
and that the judgment may not be affirmed based on Patricia=s actual fraud
claims.  Patricia asserts that the trial court did find in her favor as to the
actual fraud claims based on the trial court=s finding Athe conveyance to
Brian D. Moneyhon from Patricia Moneyhon a [sic] fraudulent conveyance.@  Based on
statutory amendments, what used to be called a Afraudulent
conveyance@ is now called a Afraudulent
transfer@ under the Uniform
Fraudulent Transfer Act.  See Tex.
Bus. & Comm. Code Ann. ' 24.001, et seq.
(Vernon Supp. 2008).  Claims under this statute are brought by one or more
creditors to challenge transfers made by a debtor.  See id.  Claims
under the Uniform Fraudulent Transfer Act do not match up with the allegations
in Patricia=s pleadings.  In her petition, Patricia does not
purport to assert any claims under the Uniform Fraudulent Transfer Act, and
liberally construing the petition to contain any claims that reasonably may be
inferred from its language, we cannot reasonably conclude that Patricia has
pleaded any claims under this statute.  On appeal, Patricia agrees that the
trial court was not referring to the Uniform Fraudulent Transfer Act  when it
found a Afraudulent
conveyance.@

The trial court=s intent in
finding a Afraudulent conveyance@ is explained in a
letter that the trial court sent to counsel.  In this letter the trial court
explains its decision, stating that, Asince the Court
has found that Patricia had no intent to convey the property unconditionally to
her son, and because of Brian=s breach of the fiduciary relationship to
his mother in failing to completely disclose factual information concerning
Medicaid and estate taxes and his failure to disclose the potential affects of
transaction, [sic] the Court hereby finds the conveyance to Brian from Patricia
a fraudulent conveyance.@  We conclude that the trial court=s subsequent
finding of a Afraudulent conveyance@ reflected its
findings of no gift and a breach of fiduciary duty.  In the context of this
record, we cannot reasonably conclude that the trial court found that Brian and
Cheryl committed actual fraud.  Accordingly, we sustain Brian and Cheryl=s second issue.








Because the trial court did not find any element of Brian
and Cheryl=s other pleaded claims, these claims cannot provide a
basis for affirming the trial court=s judgment.  See
Tex. R. Civ. P. 299; 
Vickery v. Comm=n for Lawyer Discipline, 5 S.W.3d 241,
252 (Tex. App.CHouston [14th Dist.] 1999, pet.
denied).  The only claim on which the trial court=s judgment is
based is a breach-of-fiduciary-duty claim that was not pleaded or tried by
consent.  Therefore, the equitable relief awarded in the trial court=s order, conveying
title in the Lake Jackson home to Patricia, necessarily must be reversed.  See
W & F Transp., Inc. v. Wilhelm, 208 S.W.3d 32, 46B7 (Tex. App.CHouston [14th
Dist.] 2006, no pet.) (reversing and rendering a take-nothing judgment because
jury=s findings did not
support liability against two appellants).  Accordingly, the trial court=s judgment is
reversed.[7]


III.  Conclusion

The trial court awarded relief based on
the existence and breach of a fiduciary duty.  This theory, however, was
neither pleaded nor tried by consent.  The trial court did not find any
elements of Patricia=s other claims that would support the
relief it granted; therefore, Patricia=s other claims
cannot provide a basis for affirming the trial court=s judgment.  For
this reason, we reverse the trial court=s judgment and
render judgment that Patricia take nothing against Brian and Cheryl.

 

 

 

 

/s/      Kem Thompson
Frost

Justice

 

 

Panel consists of Justices Anderson, Frost, and Guzman.

 









[1]  This court learned at oral argument that Patricia
passed away after the parties= appellate
briefs were filed. Accordingly, this court will proceed to adjudicate the
appeal as if Patricia were still alive, and this court will use Patricia=s name on all papers.  See Tex. R. App. P. 7.1(a).  This court=s judgment will have the same force and effect as if
rendered when Patricia was living.  See id. 





[2]  Patricia contends that Brian and Cheryl, through a
series of deeds, conveyed title in the Lake Jackson home to each other, and
they applied for a home-equity loan using that property as collateral.





[3]  A formal fiduciary relationship arises as a matter
of  law  in certain situations, for example between  attorney and client.  See
Swinehart v. Stubbeman, McRae, Sealy, Laughlin, & Browder, Inc., 48
S.W.3d 865, 878 (Tex. App.CHouston [14th
Dist.] 2001, pet. denied).  An informal relationship may give rise to a
fiduciary duty when one person trusts in and relies on another, whether the
relationship is a moral, social, domestic, or purely personal one.  See
Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 176 (Tex. 1997). 
However, not every relationship involving a high degree of trust and confidence
rises to the stature of a fiduciary relationship.  See id. at 176B77.  Texas courts do not create such a duty lightly.  See
id.





[4]  During oral argument, Patricia=s appellate counsel urged this court to consider an
affidavit by Patricia, included in the record in support of Patricia=s initial pleadings, as evidence that she alleged the
existence of a fiduciary duty.  Presuming that we may consider the affidavit as
part of the live pleadings, any allegations in the affidavit support pleadings
for misrepresentation, but do not support any alleged pleadings for the
existence or breach of a fiduciary relationship.





[5]  Patricia asserts that Brian and Cheryl must have
been aware that her petition contained a claim for breach of fiduciary duty
because, in her petition, Patricia sought a constructive trust and, Patricia
asserts, such relief is only available when a fiduciary duty has been
breached.  This argument lacks merit.  A constructive trust is available in
other circumstances, for example, as a remedy for actual fraud.  See
Swinehart, 48 S.W.3d at 878.





[6]  Patricia argues on appeal that Brian and Cheryl,
themselves, presented evidence concerning the issue of a fiduciary relationship,
citing evidence of the joint bank account shared by Brian and Patricia, Brian=s presence at the closing for both the Bash Place and
Lake Jackson homes, and Brian=s testimony of long-term
care and financial support of multiple elderly family members, including
Patricia.  However, any evidence that could be construed as supporting the
existence or breach of a fiduciary duty was elicited to prove or disprove
fraud, an allegation upon which Patricia sought equitable relief as reflected
in the pleadings.  The doctrine of trial by consent does not apply when the
evidence of an unpleaded matter is relevant to the pleaded issues because it
would not be calculated to elicit an objection.  In re J.M., 156 S.W.3d
696, 705 (Tex. App.CDallas 2005, no pet.); RE/Max of Tex., Inc. v.
Kater Corp., 961 S.W.2d 324, 328 (Tex. App.CHouston [1st Dist.] 1997, pet. denied). 





[7]  Because we sustain the first two issues, we need not
and do not address Brian and Cheryl=s
remaining issues.